## Kolb's Trust

Before Van Dusen, P. J., Stearne, Sinkler, Klein, Bolger, and Ladner, JJ.

*Herbert A. Speiser* of *Speiser & Speiser*, for exceptant.

*William A. Gray*, contra.

KLEIN, J., November 27, 1942.—This litigation involves another unhappy episode arising from an un-

fortunate marriage contracted by Katharine Kolb, a rich Philadelphia heiress, with Matthew B. A. Paanakker, exceptant, a European of modest circumstances, whose own admissions in this record reveal him to be a person of expensive tastes and questionable morals.

Learned counsel for exceptant has skillfully presented a highly technical, legalistic argument urging that the auditing judge erred in terminating the trust because of the dependent nature of the covenants in the agreement upon which the trust instrument was based. An analysis of the essential facts in this case, stripped of all technicalities, leaves no doubt that the conclusion reached in the adjudication was just, proper, and legally correct.

Exceptant is a British subject, born in Holland, whose principal residence was in France. While in Paris he met Katharine Kolb, the daughter of the late Louis J. Kolb, who was a wealthy and respected citizen of this community. Paanakker married Miss Kolb in Philadelphia in June 1922. The couple returned to Paris, where they established a permanent home purchased by Colonel Kolb for $80,000, and resided together for about 10 years. During this period Paanakker received more than $100,000 in cash from his father-in-law. Two sons were born of the marriage: Jean Jacques, born May 7, 1923, and Peter Anthony, born May 25, 1925.

The record further discloses that in August or September of 1932 Paanakker became involved as co-respondent in a divorce suit instituted by a Scottish nobleman against his wife, and was subsequently adjudged guilty. Paanakker's wife became dangerously ill and suffered a nervous breakdown, as a result of which her parents brought her back to the United States with her two children in December 1932. About six months thereafter Paanakker came to Philadelphia and took the older child, Jean Jacques, from his wife's custody without her consent and removed the child to

Europe. Mrs. Paanakker, shortly thereafter, instituted divorce proceedings against exceptant and obtained a final decree in Philadelphia on February 8, 1935. On April 27, 1935, she married her present husband, Colonel Theodore Barnes, an officer in the United States Army.

The older child was placed in a boarding school in Europe, and the younger one remained in the United States with his mother. Paanakker was in financial difficulties and unable to pay his son's board bills, as the result of which the headmaster notified him that the boy would not be permitted to remain in the school.

With the family situation in this condition Paanakker, on February 11, 1937, after extended negotiations, entered into a cold-blooded financial arrangement with his former wife and her father to return the child to her. This agreement stated, inter alia, that its purpose was to settle the question as to who should have the legal right to the custody of the children and provided that absolute physical and legal custody and control of the two children was given to the mother. It further provided that Paanakker was released from all duty to support and maintain the children and Mrs. Barnes assumed all liability for future support and maintenance. Paanakker also agreed "that both or either of said children may be legally adopted by Mr. and Mrs. Barnes, or by Kolb, provided only that no change shall be made in the names of said children." The agreement further reserved for Paanakker the right to visit the children under certain fixed and rigid stipulations.

As consideration for surrendering his rights and control over his children, Paanakker was paid $11,500 in cash by Kolb, plus $2,000 to bring the older child back from Europe, and $6,500 to cover the fees of his attorneys. In addition to this, Kolb agreed to create a trust fund of $50,000 for the purpose of paying Paanakker $5,000 a year for 10 years, with spendthrift provisions, free from attachment by Paanakker's cred-

itors. The agreement contained other provisions not necessary to recite.

From the foregoing it is clear that Paanakker agreed, for money, to surrender all control over his two sons and to permit adoption by either Colonel Barnes or Colonel Kolb. Immediately after the consummation of this agreement, Paanakker returned to Europe and remarried on April 16, 1937.

Following the execution of the agreement and the creation of this trust, in November 1937, a petition was filed by Colonel Barnes and his wife, the mother of the two boys, for their adoption in the United States District Court for the District of Columbia, which was their domicile, as noted in the agreement.

Paanakker, in clear violation of his agreement, contested the adoption and filed an answer and cross-petition, wherein he professed to consent to the adoption, but adroitly interposed such conditions as to make the adoption impossible under the laws of the District of Columbia.

Justice Jennings Bailey, of the District of Columbia Court, in his opinion dismissing the petitions for adoption, said, inter alia:

"Mr. Paanakker answered these petitions and admitted the execution of the agreement, but in effect refused to consent to the adoption unless the order of the court should preserve his rights under the agreement. He also put in a counterclaim seeking a declaratory decree as to his rights under this contract.

"As to this counterclaim, I think that the court has no jurisdiction. This is not a proceeding in equity, but is entirely statutory, and the only question for the court is whether the prayers of the petition for an adoption should be granted, and the counterclaim will be dismissed. Nor has the court any power to make the adoption conditional upon any right of visitation or other condition.

"The natural father having refused his consent to the adoption, except upon conditions which the court

has no jurisdiction to make, the only question that remains is, whether that consent can be dispensed with where, in the language of the statute, 'investigation has shown to the satisfaction of the court, extraordinary cause why such consent should be dispensed with.'

"While in my opinion, the refusal of the respondent to consent is largely due to the desire to get a larger sum from his former father-in-law, and while he has conducted the trial of this case apparently rather with the intent to blacken the character of Mr. Kolb and his former wife than to offer testimony confined to the issues in the case, yet it does not appear that his character is such, so far as his relations with his children are concerned, as would justify the court in depriving him of his parental rights. The court would not authorize an adoption that would be contrary to the interest of the children, but the mere fact that the adoption would be to the interest of the children would not justify the adoption, where the natural parent refuses to consent.

"On the whole, therefore, while regretting the refusal of the natural parent to consent to what appears to be so much to the interest of his children, I feel constrained to deny the prayer of the petitions."

The contention of exceptant that his consent to the adoption was dependent upon his right of visitation cannot justify the position he has taken in preventing the adoptions. The agreement is clear. If he desired to interpose other conditions or safeguards concerning his right to visit his children, this should have been done before and not after he signed the agreement and accepted the monetary benefits thereunder. Besides, there is no credible testimony in this record which would support a conclusion that there was any infringement upon his right to visit his children by his wife or father-in-law.

A careful study of this record leaves us no alternative but to conclude that Paanakker has breached the agree-

ment upon which this trust is predicated. His right to enjoy the benefits of this trust is directly and unequivocally interwoven with his continued compliance with the terms of the agreement. Having made his decision to refuse to honor one of the basic provisions of the agreement, he has lost his right to the benefits under the trust fund. He cannot have both the penny and the cake.

The exceptions are all dismissed and the adjudication is confirmed absolutely.